Ruffin, C. J.
 

 The husband was dispunishable for waste, because, while in possession, he was not tenant for life in his own right, but was seised with his wife in fee in her right. Besides, the wife, in whom the inheritance was; could not sue him. But it is otherwise with t,he: defendant. For, although he purchased the defendant’s, estate, his seisin and possession are several, and he is strictly p tenant for the life of the husband.
 

 
 *310
 
 The case is similar to that mentioned by Lord Coke of tenant in tail after possibility of issue extinct ¿ who was not liable for waste in respect that he once had the inheritance in him. But the privilege was personal, and his fe offee was but tenant for life, and, as such, liable for waste.
 
 t
 

 The question, then, is, whether the acts done and contemplated by the defendant amount to waste. We think they' do, and the plaintiff had the right to the decree, both as to the injunction and the amount. Of course the question is to treated, as embracing the case of dower as well as curtesy. It is certainly proper, in cases of this kind, to have a view to the spirit and reason of the common law; and therefore many things, that constitute waste in England and many hereafter do so here, because prejudicial to the inheritance, ought not to be so held here at present, because they do not prejudice, but rather improve, the inheritance. Hence, turning woodland into arable, though the timber felled be sold, is not absolutely waste in our law ; for cutting the timber on land fit for cultivation, or that may be made'so, and reducing it
 
 to¡
 
 that state, may, in the condition of our Country, be a benefit, rather than an injury, to the reversioner. If this, swamp be of the fertile quality, that much of the Roanoke, alluvial bottoms are, it might add greatly to the value of the inheritance to take off the whole of the timber, if the tenant would go on by embankments and ditches to prepare the land for crops. The rules, therefore, of the common law, determining what is or is not waste, are not entirely applicable to the condition of things here. But the principle, on which these rules were formed, applies here as, indeed, it does everywhere ; for it is founded in the nature of justice itself. It is that a tenant for. a limited period, or a particular estate, cannot rightfully so treat the estate as to destroy the value of the reversioner, pr materially reduce it below what it .would be, regard
 
 *311
 
 being had merely to the postponement of the enjoyment. The tenant may use the estate, but not so as to take from it its intrinsic worth. We have, indeed, said, in this State, that a widow may do a little more than that, by allowing her, for example, to make turpentine, as her husband had made it, on the land assigned for dower. That privilege may be supposed to have been estimated in assigning the dower, which is according to value. We have also held, that a widow may clear land reasonabty, as a prudent person would, for the purpose ofsupplying the place of fields previously cleared and exhausted by cultivation, leaving timber for building, fencing, fuel, and the like, and some regard, moreover, is to be had to a widow’s making a comfortable livelihood. But she cannot be allowed
 
 to
 
 begin the making of turpentine, though the land, on which the pines grow, he fit for nothing else, or, rather, would not in her time pay for the expenses of clearing and manuring for farinacious crops. That is upon the principle, on which the common law restrained a tenant for life from opening a mine. It is not a thing yielding a regular profit in the way of production from year to year from labor, but it would be taking away the land itself, and there is no'knowing howto apportion the share of the minerals which the
 
 tenant
 
 might extract. Upon the same principle the tenant ought not to cut down timber for sale merely. We should hold, as the state of the countiy now is, that a tenant for life of land, entirely wild, might clear as much of it for cultivation as a prudent owner of the fee would, and might sell the timber that, grew on that part of the land. Clearing for cultivation has, according to the decisions, peculiar claims for protection ; and a sale of the timber from the field cleared may be justly made, in compensation for clearing and bringing it into cultivation. But it seems altogether unjust, that a particular tenant should take oft' the timber, without any adequate compensation to the estate for.the
 
 *312
 
 loss of it. For he takes, in that case, not the product of the estate arising in his own time, but he takes that» which nature has been elaborating through ages, being a part of the inheritance itself, and that, too, which imparts to it its chief value. As in the case of the mine, how is it possible to apportion the timber for life and the remainder man, since it is Altogether uncertain, what the duration of the life will be ? If a tenant for life ean claim a share of the trees for sale, as a part of his profits, then the whole might be taken from the owner of the inheritance, when there happens to be a succession of life estates limited. It is said, however, that, unless he be allowed to take some of the limber, his estate will be of no value, when the land is swamp, not fit for cultivation or that cannot be made so without great expense in drains and dikes. That, we suppose, could not alter' the principle. But this case does not call for a decisive answer to that suggestion. For, in the first place, the greater part of the sales have been of shingles and staves made of timber felled on the high land on one of the tracts ; and, in the next place, one half of one of the tracts and three fifths of the other are arable, and, consequently, the timber on the swamp might by a prudent proprietor be pre. served as a provision, that would enable him to reduce to actual cultivation the whole of those portions of the land, which are arable. Certainly a tenant for life cannot insist on being allowed to make the greatest possible profit out of the land that can be made in his time. In. deed, he ought not, for the sake merely of enhancing his profits and without any view to the cultivation of any parts of the land, to cut the timber in which the chief value of the fee consists, and thus leave the exhausted or barren parts of the land, which are arable or might be made so, to the reversioner, with only timber enough on the several tracts to fence those worthless parts. That
 
 *313
 
 would really be to give to the particular estate the kernel!, and the shell to the fee.
 

 Per Curiam.
 

 Decree affirmed with costs.